UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RICHARD MILFORD PADILLA,

      Plaintiff,

v.

                              Case No. 5:18cv100-HTC

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

      Defendant.

_____/

MEMORANDUM ORDER

This case is before the Court pursuant to 42 U.S.C. § 1383(c)(3) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Richard Milford Padilla's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-83. The parties consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73 for all proceedings in this case, including entry of final judgment. Upon review of the record before the Court, the Court concludes the Administrative Law Judge's ("ALJ") denial of SSI is supported by substantial evidence. The Commissioner's decision, therefore, will be affirmed.

## ISSUES ON REVIEW

Mr. Padilla, who will be referred to as Claimant, Plaintiff, or by name, argues: (1) the ALJ erroneously evaluated the opinion evidence of record in determining Plaintiff's residual functional capacity ("RFC"); (2) the ALJ erroneously evaluated Plaintiff's testimony regarding his symptoms and limitations; and (3) the vocational testimony relied upon by the ALJ is inconsistent with the Dictionary of Occupational Titles ("DOT").  ECF Doc. 15 at 1.

## PROCEDURAL HISTORY

On February 10, 2015, Plaintiff filed an application for SSI, claiming disability with an onset date of November 21, 2011, related to a learning disability, attention deficit hyperactivity disorder and being overweight.  T. 74-75.[1]  The Commissioner denied the application initially and on reconsideration.  T. 85, 103. At the hearing, the Plaintiff amended the alleged onset date to February 10, 2015. T. 33.  After the hearing on February 14, 2017, the ALJ found Claimant not disabled under the Act.[2]  T. 15-26.  The Appeals Council denied a request for further review

---

[1] References to the record will be by "T.," for transcript, followed by the page number.

[2] Plaintiff amended his onset date because a claimant cannot receive SSI for any period prior to the month in which he applied for SSI.  *See* 20 C.F.R. §§ 416.330, 416.335.  Thus, the relevant period is then February 2015 through May 2017, when the ALJ rendered her decision (T. 12, 171). *See id*; *Stone v. Comm'r of Soc. Sec. Admin.*, 596 F. App'x 878, 879 (11th Cir. 2015); *see also, e.g., Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (stating "[t]he proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date").

and, as a result, the ALJ's decision became the final determination of the Commissioner.  T. 1-3.

On April 20, 2018, Claimant filed a complaint with this Court seeking review of the Commissioner's decision.  ECF Doc. 1.  The Commissioner filed an answer on August 7, 2018, accompanied by the record below.  ECF Docs. 11, 12.  On October 9, 2018, Claimant filed a memorandum in support of his complaint, outlining his assignments of error.  ECF Doc. 15.  The Commissioner filed a responsive memorandum in support of her decision on November 8, 2018.  ECF Doc. 16.

<u>STANDARD OF REVIEW</u>

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards."  *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  *Dyer v. Barnhart*, 395

F.3d 1206, 1210 (11th Cir. 2005) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). "Even if the evidence preponderates against the [Commissioner], [the Court] must affirm if the decision is supported by substantial evidence." *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]"' *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (citing *Black Diamond Coal Min. Co. v. Dir.*, OWCP, 95 F.3d 1079, 1082 (11th Cir. 1996)). The Court, however, may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the Court must conduct what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

The Act defines disability as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To qualify as a disability, the physical or mental impairment must be so severe the Claimant not only is unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 1382c(a)(3)(B).

Pursuant to 20 C.F.R. § 416.920(a)(4), the Commissioner analyzes a disability claim in five steps:

1.      Is the Claimant performing substantial gainful activity; if he is, he is not disabled.

2.      If the Claimant is not performing substantial gainful activity, does the Claimant have a severe impairment.

3.      If the Claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, do his impairments meet or medically equal the criteria of any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; if so, the Claimant is presumed disabled without further inquiry.

4.      If the severe impairment(s) is not a "listed impairment," does the Claimant have the RFC to perform his past relevant work.[3]

5.      Even if the Claimant's impairments prevent him from performing his past relevant work, do other jobs exist in significant numbers in the national economy that accommodate the Claimant's RFC and vocational factors; if so, he is not disabled.

## FINDINGS OF THE ALJ

In her written decision, the ALJ made the following findings pertinent to the issues raised in this appeal:

•      Claimant has not engaged in substantial gainful activity since February 10, 2015, the application date.  T. 17.

•      Claimant has the following severe impairments: obesity; history of attention deficit hyperactivity disorder; mild intellectual disorder; and mood disorder.  T. 17.

•      Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).  T. 17.

_____

[3] "[C]laimant bears the initial burden of establishing a severe impairment that keeps him from performing his past work."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

• Claimant has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except that he can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, stoop, kneel, crouch, crawl; and should avoid concentrated exposure to hazards. Claimant is limited to simple, routine, non-production tasks. He should be in a stable work environment where there would be few changes in the work processes or procedure and any changes would be gradually introduced. T. 20.

• Considering the Claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Claimant can perform (20 C.F.R. §§ 416.969 and 416.969(a)). T. 25.

• Claimant has not been under a disability, as defined in the Act, from February 10, 2015, the date the application was filed, to May 10, 2017, the date of the ALJ's decision. T. 26.

## FACTUAL BACKGROUND AND MEDICAL HISTORY

At the February 2017 hearing, Mr. Padilla and his mother, Vernelle Padilla,[4] provided testimony regarding Mr. Padilla's health, daily activities, and work history. Born on January 17, 1991, Mr. Padilla graduated high school with a special diploma

---

[4] The transcript identifies Mr. Padilla's mother as "Bernelle Padilla." The correct spelling is Vernelle.

when he was 19 years old. T. 51, 204. He had to repeat one grade. T. 51. Mr. Padilla's medical records indicate he is 5'10" tall and weighs about 400 pounds. T. 52, 346. He was enrolled in special education classes when he was in school and took medication for attention deficit hyperactivity disorder ("ADHD") from second grade to eleventh grade. T. 51. Mr. Padilla indicated he ceased taking ADHD medication when he was 18 years old because it caused him to "feel funny." T. 38.

Mr. Padilla's employment history is scarce, including only two (2) jobs, which were of short duration. T. 25, 171, 204. In 2011, he worked for a moving company but "couldn't keep up with the other workers," because he "couldn't hardly breathe running up a flight of stairs" and "wasn't working fast enough." T. 45. He also worked for GAC Contractors but was laid off. T. 45. Although, Mr. Padilla applies on-line for jobs "once a week," he has not had any interviews. T. 49, 54. When asked why, Mr. Padilla responded "because I probably didn't call back and check back on it." T. 54. When examined by his attorney, Mr. Padilla agreed that "maybe" his lack of follow up could be due to depression. T. 55.

Mr. Padilla also contacted the Florida Department of Education's Division of Vocational Rehabilitation ("VR") in 2011 to try to gain employment, but failed to follow through, stating "I went, and I lost the paper to it that came in the mail. And, when I found it, (inaudible) and I just never got around to calling them back." T. 51-52. When asked why he has not tried to get back in touch with the VR, Mr.

Padilla responded "I just haven't tried to." T. 52. His mother provided similar testimony, stating "we missed that appointment," "I honestly forgot, and he forgot." T. 62. Mrs. Padilla acknowledged that they had done nothing to follow up with the VR in the last five and a half years and explained "I know, it's, a lot of it is my fault." T. 63.

On referral from the VR, Mr. Padilla underwent an initial psychoeducational evaluation with Brent Decker, Ph.D., in August 2011. T. 323. Dr. Decker confirmed that Mr. Padilla suffered from ADHD and has traits of Dyslexia. T. 328. He indicated that Mr. Padilla would benefit from medication for concentration and focus and that he should be encouraged to enroll in technical school. T. 329.

Despite claiming to be disabled, Mr. Padilla testified that he believes "most likely [he] could do a simple job." T. 48. He believes that he is "probably" capable of working a full-time job, like working in a grocery store, putting groceries in bags and helping people take the groceries out to their car. T. 46. Mr. Padilla's mother also believes Mr. Padilla could work if given a chance, testifying that "if somebody would just give him a chance, [] he could prove himself." T. 62. She believes, however, that nobody wants to give him a chance because of his size and because he "does everything slow." T. 62.

Mr. Padilla lives with his mother and adult brother. He drives his own car and picks his mom up from work every day. T. 67. He also does household chores on a

regular basis, including doing yard work (T. 47), cleaning (T. 49) or going to the grocery store (T. 49). However, his mother has to write down the chores or he will forget to do them. T. 47. Similarly, if she needs him to buy more than a couple of items from the store, she will need to write those down. T. 50. For leisure activities, Mr. Padilla socializes with his family members once or twice a week (T. 54), walks "a little bit" "up and down the streets," (T. 52) and plays complicated video games, including Call of Duty, World of Warcraft and Grand Theft Auto (T. 54). He plays the games online with his cousin. T. 54.

Mr. Padilla testified he usually gets up around 8:00-9:00 AM, will go back to bed around 6:00-7:00 PM, then be up the rest of the night. T. 56. When asked whether his inability to sleep through the night was because he played video games all night, he stated that he usually gets off the video games about 8:00 or 9:00 PM, and then will just watch videos on his tablet. T. 56. According to Ms. Padilla, however, her son "wants to sit up all night on the video games." T. 66. She testified that he is still asleep when she leaves for work around 7:00 AM and that "he'll take a nap for two or three hours and then he's up the rest of the night" (T. 66), going to bed again around 4:00-5:00 AM. T. 67. In a March 2015, Function Report-Adult-Third Party, completed by Mrs. Padilla, she indicated that Mr. Padilla plays video games or watches TV from the time he wakes up until he goes to bed and that he "hardly sleeps at night then he wants to sleep all day." T. 215.

With regard to his limitations, Mr. Padilla testified that he does not have any problems counting change or getting along with people in positions of authority. T. 50. However, he gets confused in stressful situations (T. 51) and has not been to church in a month because the loud music gives him a headache (T. 56). He testified that he has shortness of breath after walking about half a block. T. 57. Mr. Padilla also completed a Supplemental Pain Questionnaire in which he identified feeling pain "when walking a couple of hours" and that he cannot walk or stand too long. He denied this pain affected his ability to engage in his daily activities. T. 223-24. In the Function Report, Mrs. Padilla indicated that Mr. Padilla "is slow at learning" doesn't clean or bathe himself "very good," is forgetful and mows the yard very poorly. T. 215-16. In her remarks, she stated "I feel like the older he gets his memory isn't as good and he doesn't take time to understand things." T. 221. In his own Function Report, Mr. Padilla described his limitations as "cannot remember what was asked, do not complete task, work to[o] slow." T. 225. He attributed his disability as causing him to stay up all night and sleep during the day. T. 226. He further stated that when he reads he does not understand what he is reading and then will go to the next task. T. 230.

Mr. Padilla was seen for a consultative examination in March 2015 with State Agency provider, Paul Tritsos, Psy.D. Dr. Tritsos diagnosed Mr. Padilla with Dysthymic Disorder, ADHD, by history, Borderline Intellectual Functioning, by

history, and obesity. T. 349. Additionally, in April and May 2015, State Agency psychological consultants Frances Martinez, Ph.D., and Alan Harris, Ph.D., respectively, completed a Psychiatric Review Technique Form and Mental Residual Functional Capacity Assessment on Mr. Padilla, based on their review of his records. Both doctors determined Mr. Padilla was moderately limited in his ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; and (4) respond appropriately to changes in the work setting. T. 84, 100.

Because the medical evaluations before the ALJ were limited at the time of the February 2017 hearing, at the conclusion of the hearing, the ALJ ordered additional IQ and memory testing. T. 73. Accordingly, Mr. Padilla underwent a second consultative examination with Theresa Bazacos, Ph.D., in March 2017. T. 352. As discussed further below, Dr. Bazacos conducted a mental status examination and administered several achievement and memory tests on Mr. Padilla, like those performed by Dr. Decker over five (5) years earlier. T. 353. As a result of her examination, Dr. Bazacos determined that Mr. Padilla fell in the extremely low range of functioning for immediate memory, borderline range of functioning for delayed memory and suffered from a mild intellectual disability. Dr. Bazacos concluded that Mr. Padilla's conditions "mildly impact[ed] activities of daily living, vocational performance and interpersonal interactions." T. 359.

<u>ANALYSIS</u>

A.    <u>Weight Assigned to Medical Source Opinions</u>

Mr. Padilla first argues the ALJ erroneously evaluated medical source opinion evidence in reaching her RFC decision.  ECF Doc. 15 at 1.  Specifically, he takes issue with the "little weight" she assigned to Dr. Decker's 2011 opinion.  *Id.* at 5-8.  Mr. Padilla argues that greater weight should have been assigned to Dr. Decker's opinion and that the ALJ committed error in assigning significant weight and partial weight to the opinions of the agency examiners, Dr. Tritsos and Dr. Bazacos, respectively.

Mr. Padilla's arguments, however, are misplaced for several reasons.  First, greater reliance on Dr. Decker's opinions would not have been beneficial to him as Dr. Decker found Mr. Padilla to have "mild symptoms or impairment." Similarly, Mr. Padilla's scores on the achievement and memory tests were lower, indicating more impairment, in 2017 when they were administered by Dr. Bazacos than when they were administered by Dr. Decker in 2011.  Thus, any error in the assignments was harmless.  Second, Dr. Decker's opinions do not support a finding of disability.  Third, the Court finds the ALJ's decision was supported by substantial evidence.

As an initial matter, none of the opinions at issue are from a treating physician; thus, none are entitled to deferential status.  *See* 20 C.F.R. §§ 416.913(a), 416.927(c), (e); Social Security Ruling (SSR) 06-03p, 2006 WL 2329939.  Rather, the weight

assigned to a physician's opinion by the ALJ consists of a myriad of factors, including the physician's relationship with the Claimant, the evidence the physician presents to support his or her opinion, the consistency of the opinion with the record as a whole and the physician's specialty. *See* 20 C.F.R. § 416.927(c); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004): *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

   1. Dr. Decker

In August 2011, Mr. Padilla was referred to Dr. Decker by the VR for a psychoeducational evaluation to assess his current level of intellectual and emotional functioning and clarify if he has an attention disorder. T. 323. As part of his evaluation, Dr. Decker administered the following tests on Mr. Padilla: the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV); the Wechsler Individual Achievement Test-Second Revision (WIAT-II) and the Woodcock-Johnston Test of Cognitive Abilities-III. T. 324. The test scores indicated that Mr. Padilla was within the borderline range of intellectual functioning, the extremely low range in the ability to sustain attention, concentrate and exert mental control and in the low and very low range for cognitive efficiency and processing speed, respectively. Based on those test scores and his examination, Dr. Decker confirmed Mr. Padilla has ADHD, combined type, and that he has Dyslexic tendencies. T. 328-29. Additionally, Dr. Decker found Mr. Padilla to have "cognitive limitations that can

make academic work challenging for him without the appropriate accommodations." T. 329. Dr. Decker assigned Mr. Padilla a Global Assessment of Functioning ("GAF") score of 65, indicating mild symptoms or impairment. T. 328. The ALJ "afford[ed] little weight to the opinions of Dr. Decker . . . as he rendered these opinions after examining and testing the Claimant on one occasion nearly six years ago." T. 24. The ALJ found Dr. Decker's opinion thus, "too remote to be of relevance to his current claim." T. 24.

It is undisputed that Dr. Decker's opinion was more than five (5) years old at the time of the hearing. In fact, during the hearing, the ALJ discussed the need for additional testing with Mr. Padilla's counsel, who agreed and stated, "well I was going to suggest at some point maybe you want some up-to-date testing." T. 38. The fact that the examination was performed around the time of Mr. Padilla's initial alleged onset date does not render it more credible than the more recent opinions of Drs. Bazacos and Tritsos. *See Deane v. Colvin*, 247 F. Supp. 3d 152, 167 (D. Mass. 2017) (affirming ALJ's assignment of little to no weight to treating physician's opinion where "the record indicates Dr. Weiner has not treated the claimant since 2010" and because "more recent medical evidence from the intervening four years indicates the claimant is less limited than as opined by Dr. Weiner"). As the Commissioner points out, Dr. Decker's examination of Plaintiff occurred four (4)

years to the date Mr. Padilla applied for SSI and the date from which he would be entitled to any SSI benefits.

Additionally, Dr. Decker did not consider Mr. Padilla's daily activities in his evaluation. Several of those activities, such as playing complicated videogames, driving and grocery shopping, are inconsistent with someone with limited ability to focus and concentrate. *See Anteau v. Comm'r of Soc. Sec.*, 708 F. App'x 611, 615 (11th Cir. 2017) (noting the ability to drive a car "inherently requires a minimum ability to focus, understand, and remember while exercising independent judgment and decision-making skills"); *Parks v. Comm'r of Soc. Sec.,* 401 F. App'x. 651, 655 (3rd Cir. 2010) (agreeing with ALJ's finding that ability to read, watch television and play video games are activities requiring a degree of concentration, persistence and pace); T. 218, 239. Thus, the ALJ's assignment of little weight to Dr. Decker's opinions is supported by substantial evidence. *See Jarrett v. Comm'r of Soc Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011) (noting medical source opinion may be discounted if "evidence of the claimant's daily activities contradicts the opinion").

Mr. Padilla insinuates that the ALJ's treatment of Dr. Decker's opinion is inconsistent with the ALJ's statement that she considered his entire medical history. ECF Doc. 15 at 7. The Court does not find any such inconsistency. To the contrary, it was the ALJ's consideration of Mr. Padilla's entire medial history that resulted in her decision to assign little weight to Dr. Decker's opinion.

Moreover, Mr. Padilla was not adversely affected by the ALJ's decision to assign little weight to Dr. Decker and, thus, any error in that regard was harmless. *See e.g., Hoffman v. Astrue*, 259 F. App'x 213, 217 (11th Cir. 2007) (holding that where substantial evidence supported ALJ's conclusions that claimant's physical limitations were not disabling, any error from the ALJ's misunderstanding of the significance of claimant's moderate disc degeneration was harmless). In other words, it benefitted Mr. Padilla to have less weight assigned to Dr. Decker's opinion because Dr. Decker assigned a greater GAF score to Plaintiff than did Dr. Tritsos and Mr. Padilla did better on his IQ, achievement and memory tests for Dr. Decker than he did for Dr. Bazacos.[5]

Mr. Padilla argues the error was not harmless because the vocational expert testified that no jobs would be available if Mr. Padilla were off task by 20% or more each day. ECF Doc. 15 at 8. There is, however, no support for that argument in the record because neither Dr. Decker nor any physician opined that Mr. Padilla would be off-task by 20% or more each day in performing a simple, routine, non-production task. Indeed, Mr. Padilla's contention that he is disabled is inconsistent with Dr.

---

[5] Dr. Decker and Dr. Bazacos assigned Claimant verbal comprehension scores of 87 and 76, respectively; perceptual reasoning scores of 77 and 75, respectively; working memory scores of 69 and 71, respectively; processing speed scores of 81 and 59, respectively; and full-scale IQ scores of 75 and 66, respectively. T. 324, 356.

Decker's evaluation as Dr. Decker determined that he should be "encouraged to pursue [being a mechanic] by enrolling in technical school." *See* T. 329.

### 2. Dr. Tritsos

Mr. Padilla was not examined by a consulting or treating physician after Dr. Decker, until March 2015, when he was referred to Dr. Tritsos for a clinical evaluation with mental status.   T. 350.   Dr. Tritsos diagnosed Plaintiff with Dysthymic Disorder, ADHD (by history) and borderline intellectual functioning (by history), and assigned him a GAF score of 55.  T. 351.  In his "Prognosis," Dr. Tritsos stated Mr. Padilla "appears to be able to handle his activities of daily living/hygiene," "has adequate social comfort/ability," and "has experienced trouble with concentration/focus, with variable impact on his day-to-day functioning."  *Id.*  The ALJ gave Dr. Tritsos's opinion significant weight, finding it "well supported by his own clinical examinations" and "generally consistent with the record as a whole." T. 23.

Plaintiff takes issue with the ALJ's reliance on Dr. Tritsos's opinion, arguing that he "performed very little testing" and further determined that "IQ and/or memory testing could be pursued if greater confidence and specificity is needed regarding cognitive functioning."  ECF Doc. 15 at 7; T. 351.  While Dr. Tritsos did not administer an IQ or achievement test on Mr. Padilla, he did conduct a mental status exam of Mr. Padilla, which included testing his recall, ability to perform

calculations, knowledge of current events and basic grasp of verbal and oral skills. T. 350. Additionally, Dr. Tritsos also incorporated Dr. Decker's findings in his opinion. T. 350-51. To the extent Mr. Padilla is arguing Dr. Tritsos's opinion is not reliable because it referenced the possibility of additional testing, that additional testing was performed two (2) years later by Dr. Bazacos, as ordered by the ALJ, and the results of that testing were not inconsistent with Dr. Tritsos's opinions. T. 360.

Moreover, unlike Dr. Decker, Dr. Tritsos considered the daily activities performed by Mr. Padilla in his analysis and his findings are consistent with Mr. Padilla's own testimony regarding his abilities. Indeed, as set forth above, Mr. Padilla and his mother provided functional reports indicating that Mr. Padilla takes care of his own personal hygiene and Mr. Padilla testified that he interacts socially with his family members on a regular basis. Dr. Tritsos's finding that Mr. Padilla experiences trouble with "concentration/focus, with variable impact on his day-to-day functioning," is also consistent with Mr. Padilla's ability to drive his mom home from work every day, make sandwiches, visit with his family, go to the grocery store, do house chores and play video games.

3. Dr. Bazacos

In March 2017, Mr. Padilla was referred to Dr. Bazacos for a consultative evaluation and additional achievement and memory testing. T. 353. Dr. Bazacos

conducted a general clinical evaluation with mental status, achievement testing, memory assessment and mental functional capacity on Mr. Padilla. *Id.* Dr. Bazacos reviewed the reports of Drs. Tritsos and Decker as part of her evaluation. *Id.* In addition to conducting a mental status exam, Dr. Bazacos also administered the WAIS-IV, WJ-IV and WMS-IV tests on Mr. Padilla. T. 355.

Based on her mental status exam and after considering Mr. Padilla's daily living activities, Dr. Bazacos determined that Mr. Padilla displayed adequate social skills; that his abstract reasoning appeared adequate; judgment related to self-care and problem-solving were fair; insight appeared to be fair and overall intelligence to be in the range of borderline intellectual functioning. T. 355. Based on the tests administered, Dr. Bazacos concluded that Mr. Padilla "demonstrated relative weaknesses in processing speed abilities," did not have a specific learning disability, and fell in the borderline range for visual memory; extremely low range for immediate memory; and borderline range for delayed memory. T. 359. In the summary of her evaluation, Dr. Bazacos concluded that Mr. Padilla's mental health symptoms "appear to be mildly impacting activities of daily living, vocational performance, and interpersonal interactions." *Id.*

Mr. Padilla argues the ALJ erred by basing her findings in large extent upon her decision to give "partial weight" to Dr. Bazacos's March 2017 consultative examination; particularly the opinion that Mr. Padilla had "mild intellectual

disability" and "no resulting functional limitations." ECF Doc. 15 at 7. While Mr. Padilla is correct that the ALJ assigned partial weight to Dr. Bazacos's opinion, Mr. Padilla's argument misses the point that the reason partial weight was assigned (rather than great weight) was that the ALJ found Mr. Padilla to be "more limited than as found by Dr. Bazacos." T. 23. In other words, the ALJ's assignment of weight was beneficial to Mr. Padilla. Similarly, in reaching her RFC determination the ALJ assigned only partial weight to the opinions of the State agency psychologists Drs. Harris and Martinez because the ALJ considered Mr. Padilla to be *more* limited than found by those doctors.[6] T. 24.

The Court does not find any error in the assignments of weight given to Drs. Decker, Tritsos or Bazacos's opinions. The Court further finds that even if the ALJ erred, any error was harmless because the ALJ's overall decision that Mr. Padilla was not disabled is supported by substantial evidence.

B.    Evaluation of Symptoms and Limitations

Next, Mr. Padilla argues the ALJ erred by improperly evaluating his testimony regarding his symptoms and limitations. ECF Doc. 15 at 8. The Court finds no

---

[6] *See* 20 C.F.R. 416.913a(b)(1) ("Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 416.920b, 416.920c, and 416.927, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation.").

support for this position. As an initial matter, Mr. Padilla's testimony regarding his limitations is consistent with a finding of no disability. Indeed, Mr. Padilla is looking for employment and attributes his lack of employment to his failure to call potential employers back or follow-up. Moreover, Mr. Padilla began the process of working with the VR to obtain employment, which is also inconsistent with someone who believes they are unable to work. Mr. Padilla did not complete the process – not because of a disability or inability to work, but because he and his mom forgot about his appointment and, then, did not call the VR back. More importantly, Mr. Padilla testified at the hearing that he believes he can probably perform a simple job, such as bagging groceries.

Although Mr. Padilla complains of having problems concentrating and focusing and needing constant reminders, the ALJ did not err in determining that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." T. 21. As the ALJ noted, the medical and other evidence indicating that Mr. Padilla takes no medications for ADHD or mood disorder, has good memory and concentration upon recent exam, and is capable of performing activities of daily living, including driving, shopping, and, household chores, "detracts from the consistency of the claimant's statements as to functional limitations and the severity of the alleged

symptoms." T. 25; *see Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) ("The regulations do not . . . prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process."). While not dispositive, the presence of these factors undermines Mr. Padilla's assertion that he suffers from debilitating limitations. *See id.*; *Dyer*, 395 F.3d at 1210; *Stacy v. Comm'r Soc. Sec. Admin.*, 654 F. App'x 1005, 1011 (11th Cir. 2016); 20 C.F.R. §§ 416.929(c)(3)(i), 416.945(a)(3); SSR 16-3p.

Here, the ALJ articulated the reasons for disregarding Mr. Padilla's subjective testimony, namely that the severity of the symptoms are not supported by the record, and her reasons are supported by substantial evidence. See *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). Thus, the Court finds no error in the ALJ's consideration of Mr. Padilla's subjective symptoms. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (setting forth 3-part test for considering a claimant's pain symptoms as requiring (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain).

Plaintiff also contends the ALJ erred in partially relying on his cessation of ADHD medication. ECF Doc. 15 at 10-11. SSR 16-3p[7] provides that an ALJ may not "find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." The ALJ, however, did not find Mr. Padilla's symptoms to be inconsistent with the record solely because he had ceased taking his ADHD medication. Rather, the ALJ determined that Mr. Padilla ceased taking the medication because of side effects. T. 20. As stated above, there was other evidence in the record which undermined Mr. Padilla's symptoms. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

Plaintiff disputes the ALJ's determination that his testimony was inconsistent with the record, arguing the "testing performed by all three examining sources, both recent and remote, in fact demonstrated severely impaired memory and concentration." ECF Doc. 15 at 11. Once again, Plaintiff's argument is not supported by the record. No such determinations were made by Drs. Decker, Tritsos

---

[7] On March 16, 2016, the Commissioner rescinded SSR 96-7p, in favor of SSR 16-3p. This modification was enacted to eliminate use of the term "credibility", as "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p.

or Bazacos. During her examination, Dr. Bazacos found Plaintiff demonstrates "adequate attention and concentration." T. 354. She assessed "recent memory appeared to be good" and "[r]emote memory appeared to be adequate." T. 355. Plaintiff was capable of "complet[ing] tasks of alphabetic and numeric reiteration without errors." T. 344. Similarly, while Dr. Tritsos and Dr. Decker noted that Mr. Padilla had limitations based on his concentration and focus, they also noted that the effect of those limitations was "variable" and "mild," respectively.

C.    Consistency of VE Testimony

Finally, Mr. Padilla argues the vocational testimony the ALJ relied upon is inconsistent with the DOT. ECF Doc. 15 at 12. The ALJ is obligated to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the *Dictionary of Occupational Titles* (DOT)." SSR 00-4p.

The vocational expert (VE) specified three jobs the Plaintiff could perform. T. 26, 70-71. Plaintiff notes the DOT Code for the first job offered, "Ticket Taker", actually corresponds to the occupation "Press-Box Custodian."[8] *See* "Ticket Taker" *DOT*, No. 344.667-010, 1991 WL 672863. While the ALJ did not identify the single digit inconsistency, this was harmless error. *See Diorio v. Heckler*, 721 F.2d 726,

---

[8] DOT Codes for occupations "Ticket Taker" and "Press-Box Custodian" are 344.6**6**7-010 and 344.6**7**7-010, respectively.

728 (11th Cir. 1983); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (finding "[p]rocedural perfection in administrative proceedings is not required…unless the substantial rights of a party have been affected.").

Similarly, Plaintiff contends the DOT Code 323.687-014 offered by the VE for the job "Common Area Cleaner" actually corresponds to the occupation "Cleaner, Housekeeping." "Cleaner, Housekeeping" *DOT*, No. 323.687-014, 1991 WL 672783. At the hearing, the VE described the occupation as "like the person who cleans this office." T. 70. This characterization is compatible with the DOT Code description of "Cleaner, Housekeeping" as an employee who "[c]leans rooms and halls in commercial establishments." *Id.* Further, VE testimony and the DOT both categorize the occupation as light work. *See id.*; T. 70. Thus, there is no inconsistency with the VE testimony and the DOT. Instead, Plaintiff appears to be arguing an inconsistency exists within the DOT itself.

Lastly, Plaintiff asserts the VE "identified the occupation of "laundry sorter" as a light unskilled occupation with DOT Code 316.687-014. This DOT Code does not appear to correspond with any occupation in the DOT, nor does an occupation titled "laundry sorter" appear in the DOT." ECF Doc. 15 at 13. However, at the ALJ hearing, the VE correctly identified, "Laundry sorter, 3**61**.687-014." T. 70. DOT Code 361.687-014 corresponds to the laundry occupation "Classifier," which is also termed "Sorter, Laundry Articles." "Classifier" *DOT*, No. 361.687-014, 1991

WL 672991. Therefore, the VE testimony is both consistent with the DOT and provides substantial evidence supporting the ALJ's decision.

Accordingly, it is ORDERED:

1.     The decision of the Commissioner is AFFIRMED and Plaintiff's application for Supplemental Security Income is DENIED.

2.     The clerk is directed to enter judgment in favor of the Commissioner and close the file.

DONE AND ORDERED this 28th day of June, 2019.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**